IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:20-CR-00250-M-2
Case No. 5:22-CV-00458-M

BASHAR HISHAM HROUB,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

ORDER

This matter comes before the court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 [DE 181] and the United States' Motion to Dismiss the § 2255 petition [DE 196]. The court finds that the petition, the United States' motion, and the record in this case conclusively show that Petitioner is entitled to no relief; therefore, no hearing is necessary pursuant to 28 U.S.C. § 2255(b). For the reasons that follow, the United States' motion to dismiss is granted and the petition is denied.

I. **Case Background**

On May 27, 2020, Petitioner was named in a multi-count, multi-defendant indictment and, as relevant here, charged in Count One with aiding and abetting a Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2, and in Count Two with aiding and abetting the brandishing of a firearm in furtherance of the robbery, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2. DE 1. Petitioner pled not guilty to the charges in the Indictment on March 19, 2021, and a trial was scheduled to commence on October 19, 2021. DE 107, 108. However, on June 14, 2021, the United States filed a Superseding Criminal Information against Petitioner alone, charging one count of aiding

1

Case 5:20-cr-00250-M    Document 205    Filed 02/13/24    Page 1 of 14

and abetting a Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2, and one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1).[1] Petitioner pled guilty by agreement to the charges in the Information on July 23, 2021. On November 17, 2021, Petitioner was sentenced to 58 months in custody. DE 172.

Petitioner now collaterally attacks his sentence, arguing that his retained counsel was ineffective in "not properly informing [him] of the consequences of the guilty plea," "failing to object to the use of the relevant conduct" at sentencing, and "failing to adequately consult with [him] about [his] right to appeal or filing a notice of appeal." DE 181 at 4-8. Specifically, Petitioner contends that his counsel coerced him into signing the plea agreement and, had Petitioner been aware of the contents of the agreement and what the judge was going to do at sentencing, he would not have signed it. *Id.* at 4-5. In addition, Petitioner asserts that his counsel failed to object to enhancements involving "relevant conduct" at his sentencing and, had he done so, "the issue would have at least been preserved for appellate review." *Id.* at 5-6. Finally, Petitioner argues that after he was sentenced, counsel failed to confer with him about his right to appeal and, had he done so, he "would have known that [Petitioner] desired to appeal," as would "any rational defendant . . . in [Petitioner's] position." *Id.* at 8.

The United States responded by filing a motion to dismiss (and memorandum in support), in which it argues that defense counsel successfully opposed the government's motion for detention, both before the magistrate judge and this court; effectively represented Petitioner during his arraignment and change of plea hearings during which Petitioner testified inconsistently with the instant motion; successfully advocated for a sentence significantly lower than that computed

---

[1] The conduct in Count Two occurred on April 7, 2021, during which time Petitioner was released on conditions pending trial of the charges in the Indictment. *See* DE 45, 114.

under the sentencing guidelines; and attests in this matter that he did, in fact, advise Petitioner of his appeal rights. DE 197.

Petitioner filed a reply brief in which he essentially contests the facts underlying the robbery and possession charges, and concludes that his counsel did not "help [him] fight [his] charges to the level of knowledge and importance necessary for the facts to surface before the judge. If he would have, the charges would have been dismissed . . . ." DE 200. The court has reviewed the entire record is fully apprised.

## II. Analysis

Section 2255 provides that habeas relief should be awarded when:

> the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.

28 U.S.C. § 2255(b). Once the petitioner has shown this, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010) (quoting § 2255(b)).

The Government may respond to a Section 2255 petition by filing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *United States v. Reckmeyer*, 900 F.2d 257, 1990 WL 41044, at *4 (4th Cir. Apr. 2, 1990) ("a district court may properly consider a Rule 12(b)(6) challenge to the legal sufficiency of a § 2255 petition"). In such proceedings, "the familiar standards in Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to the government's motion to dismiss." *Walker v. Kelly*, 589 F.3d 127, 138-39 (4th Cir. 2009).

A claim for ineffective assistance of counsel requires a showing of both "deficient performance and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citing *Strickland*

3

*v. Washington*, 466 U.S. 668 (1984)). Deficient performance means that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Discerning this objective standard entails consideration of "professional norms." *United States v. Cannady*, 63 F.4th 259, 265 (4th Cir. 2023).

Prejudice is shown if, but for the deficient performance, "there is a reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Given the nuance involved in pretrial negotiations, courts strictly apply the *Strickland* standard when evaluating claims for ineffective assistance of counsel at the plea-bargaining stage, and properly exercise their "limited role" with "judicial caution." *Premo v. Moore*, 562 U.S. 115, 125 (2011).

Petitioner argues that his counsel was ineffective in three respects: (1) "coercing" Petitioner to sign the plea agreement; (2) failing to object to "relevant conduct" enhancement(s) at sentencing; and (3) after sentencing, failing to advise Petitioner concerning his right to appeal.

A.  Executing the Plea Agreement

Petitioner alleges that he "was scared to go to trial" because defense counsel told him he was "facing a life sentence" based on his criminal history and on "false statements made by [his] co-Defendant." DE 200 at 4. According to Petitioner, defense counsel "consistently told [Petitioner] that handling the case the way he did would result in [Petitioner] having to serve no more than two years and [Petitioner] would serve this sentence at a minimum level camp." *Id.* Petitioner's own testimony at his arraignment and change of plea hearing belie these arguments.[2]

---

[2] *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009) ("a federal court may consider matters of public record such as documents from prior [ ] court proceedings in conjunction with a Rule 12(b)(6) motion").

4

At his arraignment on March 19, 2021, Petitioner, who is not a stranger to the criminal court system (*see* PSR ¶¶ 31-34), stated under oath that he was "fully satisfied with [his] lawyer's legal services in his case" and had "answered all of [the court's] questions truthfully." Tr. 5: 5-7; 7: 20-22, DE 188. After the court's advisements of the charges and Petitioner's rights, Petitioner pled not guilty. *See id.* Later, at his change of plea hearing on July 23, 2021, Petitioner expressed his understanding that he could face prosecution for perjury if he did not answer the court's questions truthfully; attested that he "had an adequate opportunity to discuss the superseding information and [his] case with [his] lawyer," "had all the conversations with [his lawyer] that he need[ed]," and was "fully satisfied with [his] lawyer's legal services in [his] case." Tr. 5: 2-15, DE 189. The court advised Petitioner of the charges by reading them, and Petitioner expressed his understanding of them. *Id.* 7: 18 – 8: 25. The court also advised Petitioner of the maximum possible penalties for each charge, and Petitioner expressed his understanding. *Id.* 9: 1 – 11: 10.

With respect to Petitioner's plea agreement, the court advised Petitioner that the court is not a party to and, thus, not bound by any agreements between Petitioner and the United States, and Petitioner stated not only that he signed the agreement but also that he had read and understood, and discussed with his counsel, each term of the agreement. *Id.* 11: 11 – 12: 22. Petitioner also expressed his understanding that he had agreed to waive his rights to contest and/or appeal his conviction and sentence, except on the bases of ineffective assistance of counsel or prosecutorial misconduct. *Id.* 12: 23 – 13: 16. Petitioner then answered "no" to whether anyone had made any promise to him that caused him to plead guilty and to whether any had forced or threatened him or anyone else in any way and thus caused him to plead guilty. *Id.* 14: 22 – 15: 6.

Finally, regarding sentencing, Petitioner expressed his understanding of the court's advisements as follows:

5

THE COURT: Do you understand that your lawyer's calculation of an advisory guideline range is only an estimate and that the court will determine the advisory guideline range at the sentencing hearing?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that the court has the legal authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for by the advisory guidelines range?

THE DEFENDANT: Yes, Your Honor.

THE COURT: The court can do so via a departure under the guidelines or a variance under the statute. Do you understand it's the court that will determine your actual sentence?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand your sentence may be different from any estimate your lawyer or anyone else may have given you?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand if you enter a plea of guilty and the court accepts that plea, then the court has the authority to sentence you to the maximum sentence on each count permitted by law?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You also understand that the maximum sentence on each count permitted by law is the maximum penalty that I just told you about as to each count?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand that if the court imposes such a maximum sentence, you would not be allowed to withdraw your guilty plea?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Hroub, has anyone made any promise to you as to what your actual sentence will be?

THE DEFENDANT: No, Your Honor.

6

*Id.* 16: 18 – 18: 3. Following this exchange, Petitioner stated that he understood all of his trial and appeal rights as stated by the court, as well as the consequences of pleading guilty and that he still, at that time, had the right to plead not guilty, and Petitioner attested that he had answered all of the court's questions truthfully. *Id.* 18: 4 – 20: 24. The court then read each charge again and asked Petitioner whether he did what was charged in each count; Petitioner answered yes and pled guilty to both counts. *Id.* 20: 25 – 22: 22. The Assistant United States Attorney then made a lengthy proffer of the evidence it would present had the case gone to trial, and Petitioner objected to none of it. 22: 24 – 29: 17.

"A defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity, because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted) (cleaned up). In light of such presumption, the defendant's sworn statements "present a formidable barrier in any subsequent collateral proceedings." *Id.* (citations omitted). "Thus, in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *Id.* (citations omitted).

Given Petitioner's testimony at the time he consummated the plea agreement, during which he expressed his understanding of the agreement's terms, his rights, and the consequences of pleading guilty, the court is not convinced by Petitioner's argument a year later that defense counsel had made promises to Petitioner that he would receive a sentence of "two years or less" (DE 200 at 2) if he agreed to plead guilty. Moreover, Petitioner was advised both in writing (plea agreement) and orally by the court of the maximum penalties attached to each charge, and he

7

expressed his understanding that such penalties could be imposed by the court at sentencing, *notwithstanding the plea agreement*. The Petitioner also expressed his understanding of the court's advisement, "If you plead guilty, the court may impose the same punishment as if you had pleaded not guilty and been convicted by a jury." Tr. 18: 12-14. As set forth in more detail below, Petitioner points to nothing convincing this court that a jury would have acquitted him of the charges. Thus, Petitioner has failed to demonstrate that he has suffered prejudice due to any conduct by counsel concerning his plea agreement.

  B. <u>Objections at Sentencing</u>

The presentence investigation report (PSR) in this case was issued on October 15, 2021, and proposed a custodial sentencing guidelines range of 121-151 months. PSR ¶ 89, DE 157. Defense counsel lodged nine objections to the PSR, five of which challenged the listed facts supporting the robbery conviction and three of which challenged the application of three enhancements totaling ten levels. *Id.* at 18-20. At the sentencing, after hearing argument from counsel and testimony from the case agent and from the Petitioner himself, the court sustained all enhancement objections; found that the robbery took place and Petitioner was an accessory after the fact in that he assisted his co-Defendants to escape and stored the stolen product and Williams' firearm at his girlfriend's residence; and adjusted the guidelines computation on the robbery charge to an offense level of 21. Tr. 62: 22 – 68: 7, DE 191. The probation officer re-calculated the multiple count adjustment at paragraph 80 and adjusted the offense level to 26, then subtracted three levels for Petitioner's acceptance of responsibility, for a total offense level of 23. That, combined with a criminal history category of III resulted in a sentencing range of 57 to 71 months. *Id.* 68: 9 – 69: 12.

8

After hearing from counsel regarding the § 3553 factors, the court considered Petitioner's difficult upbringing, assistance to his community, and support of his family. The court also found that Petitioner had "clearly violated the trust of this court" by engaging in criminal activity and violating conditions while on pretrial release, and by attempting to convince the court that his firearm possession charge was an aberration and he "does not believe in violence" when not long after the robbery took place, Petitioner tossed a firearm outside of his vehicle during a traffic stop. *Id.* 93: 8 – 96: 2. Due to this conduct, the court varied upward by increasing the total offense level to 25, which resulted in a sentencing range of 70-87 months. *Id.* 96: 23 – 97: 24. Having granted the government's motion for downward departure, the court determined it would reduce the middle of the range, 78 months, by 25%, for a total custodial sentence of 58 months. *Id.* 97: 24 – 98: 4.

Petitioner faults his counsel for failing to object to the court's consideration of "relevant conduct," which he clarifies in his reply brief as the criminal conduct and pretrial release violation(s) on which the court based its decision to vary upward two levels. Petitioner argues that defense counsel should have objected once the conduct was discussed because, then, the United States would have been "obligated to prove by a preponderance of the evidence that the charges were valid." DE 181 at 5. The court finds no objection was necessary; Petitioner himself testified that after the robbery, he was "later caught with large amounts" of marijuana (Tr. 48: 5-11, DE 191), and that he had spoken with the victim of the robbery, Mejd Aroury, "[a]s soon as Judge Gates released [him] on pretrial release," despite knowing that his "release conditions ordered [him] not to speak to any victims, witnesses, or co-defendants in this case" (*id.* 56: 7-23). The record reflects that this conduct undoubtedly occurred during Petitioner's pretrial release, which was not accounted for in the guidelines computation proposed in the PSR.

9

Moreover, Plaintiff testified that he had purchased from Aroury approximately 600-1200 pounds of marijuana during the latter half of 2019 and a "total" of "a couple thousand pounds." *Id.* 49: 14 – 50: 7. This was an admission of criminal conduct not previously recorded and, thus, not considered in the PSR computation.[3] Finally, the information concerning the firearm Petitioner tossed out of his vehicle, which the court considered in determining the credibility of Petitioner's argument that he was nonviolent, was included in the PSR at paragraph 41; Petitioner did not object to that information and advised the court that he had no "objections to the report that were not raised by [his] attorney." *Id.* 5: 12-18 ("We objected [to] what we needed to.").

Consequently, Petitioner did not receive ineffective assistance of counsel "because counsel is not deficient in failing to raise a meritless argument."[4] *Marsh v. United States*, Nos. 7:12-CR-138, 7:14-CV-131, 2015 WL 13735426, at *4 (E.D.N.C. Oct. 28, 2015), *recommendation adopted*, 2016 WL 591767 (E.D.N.C. Feb. 12, 2016); *see also Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) (holding that attorneys are "not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel"); *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument . . . does not constitute ineffective assistance of counsel"). Put

---

[3] Petitioner offered this information in support of his argument that he and Aroury had an ongoing, profitable "business" relationship and, thus, it would be improbable that Petitioner was involved in planning and executing the robbery and in assaulting Aroury. *See id.*

[4] The court notes the Petitioner mentions in his reply brief that he was "misled" by his counsel regarding a "3-point guideline reduction." *See* DE 200 at 3-4. In response to his counsel's declaration that "[t]he probation officer interrupted and said that Mr. Hroub could not receive a three-point reduction for both charges," Petitioner contends that counsel had previously advised him that he would receive three-point reductions for each charge and that he "was very surprised when [the judge] only applied one three-point reduction to [his] guideline point total." *Id.* Notably, during the sentencing hearing, the probation officer never interrupted nor made the statement attributed to her; rather, once the court had sustained Petitioner's objections and reduced the total offense level for the robbery charge, the probation officer simply explained her recalculation of the multiple count adjustment and reduced that level by three points for acceptance of responsibility, as described above. Tr. 68: 2 – 69: 3; 74: 2-9. In fact, there was no discussion concerning whether any three-point reduction should be applied to both counts.

10

another way, "[a]n attorney's failure to raise a meritless argument [] cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). The court concludes that Petitioner's allegations regarding defense counsel's performance at sentencing are insufficient to show it was either deficient or prejudicial to the Petitioner.

    C.    <u>Advice Concerning Appeal</u>

In the appellate context, a petitioner may demonstrate both deficient performance and prejudice by showing that counsel failed to file an appeal after the petitioner explicitly requested that counsel do so. *Bostick v. Stevenson*, 589 F.3d 160, 166–67 (4th Cir. 2009) (citing *Roe v. Flores–Ortega*, 528 U.S. 470, 477 (2000)). In this case, Petitioner does not allege that he expressly requested that his counsel file an appeal.

If the petitioner did not explicitly request an appeal, that petitioner still can establish deficient performance by showing that counsel failed to consult with petitioner, and that a reasonable attorney would have done so under the circumstances. *Bostick*, 589 F.3d at 166. A consultation in these circumstances means that an attorney must advise the client about the advantages and disadvantages of an appeal and make reasonable efforts to ascertain the client's wishes. *Id.* (citing *United States v. Witherspoon*, 231 F.3d 923, 926 (4th Cir. 2000)). If counsel has adequately consulted with the defendant about whether to appeal, "the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *United States v. Fabian*, 798 F. Supp. 2d 647, 678–79 (D. Md. 2011) (quoting *Flores-Ortega*, 528 U.S. at 478).

11

An attorney's failure to consult with a client about filing an appeal may constitute deficient performance when either a reasonable defendant would have wanted to appeal—typically because non-frivolous grounds for appeal exist—or the particular defendant adequately demonstrated to counsel an interest in appealing. *Bostick*, 589 F.3d at 166-67 (citing *Frazer v. South Carolina*, 430 F.3d 696, 707–08 (4th Cir. 2005)). Thus, a failure to consult itself is not necessarily a constitutional violation; rather, the court must consider "all the information counsel knew or should have known" during the time in which a notice of appeal must be filed. *Fabian*, 798 F. Supp. 2d at 678. "[A] highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* (quoting *Flores-Ortega*, 528 U.S. at 480).

Here, Petitioner alleges that his counsel "did not discuss any possibility of an appeal" with him and "[h]ad [counsel] bothered to adequately consult with [him] after sentencing and explain[ed] to [him] how the court arrived at the sentence [he] received, [counsel] would have known that [he] desired to appeal." DE 181 at 8. Defense counsel attests that he did, in fact, "inform[ ] [Petitioner] of his right to appeal his sentence and the time frame he had to do so" after the sentencing hearing. Declaration of Jonathan Trapp, January 27, 2023 ("Trapp decl."), ¶ 9, DE 197-1. The court need not resolve this question; even if counsel failed to consult with him, Petitioner has not plausibly alleged that non-frivolous grounds for appeal exist or that he adequately demonstrated to counsel his interest in appealing.

First, other than his Sixth Amendment right to effective assistance of counsel, Petitioner identifies no appealable issues. In fact, he waived his right to appeal or contest (in a post-conviction proceeding) any issues except those based on "ineffective assistance of counsel or

12

prosecutorial misconduct not known to Defendant at the time of Defendant's guilty plea." Agmt. ¶ 2(c), DE 132. Other than regarding his ineffective assistance arguments, Petitioner does not contend that his plea was neither knowing nor voluntary, and the court has concluded that Petitioner has alleged no plausible violations of his Sixth Amendment right. *See supra*. In addition, Petitioner does not mention any misconduct by the Assistant United States Attorney in his case.

Second, the record is silent regarding whether Petitioner demonstrated to his counsel any interest in appealing. He pled guilty pursuant to a plea agreement, which, as the Supreme Court has noted, may indicate a defendant's desire to conclude judicial proceedings. *Flores-Ortega*, 528 U.S. at 480. Furthermore, due in large part to defense counsel's efforts and to Petitioner's substantial assistance (downward departure), as well as to Petitioner's own testimony (upward variance), Petitioner was sentenced to a custodial term less than half of the bottom of the range originally proposed in the PSR. At the close of its pronouncement of the sentence, the court informed Petitioner:

> Bashar Hisham Hroub, you can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary, or if there is some other fundamental defect in the proceedings that was not waived by your guilty plea. You also have a statutory right to appeal your sentence under certain circumstances, particularly if you think the sentence is contrary to law.
>
> However, a defendant may waive those rights as part of a plea agreement, and you have entered into a plea agreement which waives some or all of your rights to appeal the sentence itself. Such waivers are generally enforceable, but if you believe the waiver is unenforceable, you can present that theory to the appellate court.
>
> With few exceptions, any notice of appeal must be filed within 14 days of judgment being entered on the docket in your case. If you are unable to pay the cost of an appeal, you may apply for leave to appeal in forma pauperis. If you so request, the Clerk of the Court will prepare and file a notice of appeal on your behalf.

Tr. 114: 12 – 115: 7, DE 191. Petitioner mentions nothing about whether he questioned or misunderstood the court's advisement, and its existence renders hollow Petitioner's claim of

prejudice. Petitioner has failed to allege a plausible claim both that his counsel's performance with respect to his appeal rights was deficient and that he has suffered prejudice.

## III. Conclusion

The United States has "conclusively show[n] that [Petitioner] is entitled to no relief." 28 U.S.C. § 2255(b). Each of Petitioner's alleged claims fail to meet both prongs of *Strickland*. That is, failing to raise a losing argument does not fall below an objective standard of reasonableness and, even if Petitioner's counsel had raised Petitioner's proposed arguments, the court finds the outcome of the sentencing hearing would have been no different. Accordingly, Petitioner does not allege a plausible claim of ineffective assistance of counsel in violation of the Sixth Amendment.

The court further finds that reasonable jurists would not find the court's treatment of any of Petitioner's claims debatable or wrong, and none of the issues are adequate to deserve encouragement to proceed further. *See Buck v. Davis*, 580 U.S. 100, 122 (2017); *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). The court therefore denies a certificate of appealability.

Petitioner's claim of ineffective assistance of counsel fails as a matter of law. Accordingly, the court thus GRANTS the United States' motion to dismiss [DE 196], DENIES Petitioner's Section 2255 petition [DE 181], and DENIES a certificate of appealability.

SO ORDERED this 13th day of February, 2024.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE